**NOT FOR PUBLICATION**

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

|  |  |
|---|---|
| CATHERINE L. WILSON,<br><br>Plaintiff,<br><br>v.<br><br>COMMISSIONER OF SOCIAL SECURITY,<br><br>Defendant. | Civil Action No. 07-3469 (PGS)<br><br>OPINION |

Plaintiff Catherine L. Wilson ("plaintiff" or "Wilson") seeks review of the Defendant, Commissioner of Social Security Administration's ("Defendant") final decision denying her claim for Disability Insurance Benefits ("DIB"). Plaintiff filed her application on June 10, 2005, alleging disability beginning on January 1, 2004. Her application was denied initially on September 19, 2005, and again on reconsideration on January 6, 2006. At plaintiff's request, a hearing was held before ALJ Dennis O'Leary on March 13, 2007 (R. 284-307; see R.44). Plaintiff appeared and testified at the hearing. ALJ O'Leary evaluated plaintiff's claim of disability de novo, and on April 6, 2007, found that she retained the residual functional capacity to perform her past relevant work as a data entry clerk (R. 10-23). The ALJ's decision became the Commissioner's final decision on June 19, 2007, when the Appeals Council denied plaintiff's request for review (R. 5-8; see R. 9, 282-83).

Background and Medical History

Plaintiff is a 51-year-old woman born on September 8, 1956. She alleges disability due to a back condition, arthritis in both feet, diabetes, sleep apnea, high blood pressure, and asthma (R.

101, 294-97). Plaintiff is 5'4" tall and weighs approximately 250 pounds. Evidently, her weight increased when she started taking steroids for her asthma. Plaintiff smokes approximately one pack of cigarettes per day (R. 117).

Plaintiff is a high school graduate (R. 288) with previous work history as a data entry clerk/assistant manager for a brokerage firm from 1988 through 2002 (R. 61). She testified that her job as assistant manager of the imaging department required her to scan images and enter data into a computer, monitor the work of others, pack boxes and put them on a shelf, call the storage company to retrieve the boxes, and attend meetings (R. 289). The boxes were full of paper, and weighed as much as 15 pounds (R. 289). In addition to packing the boxes, she lifted them onto shelves which required much bending. Overall, she spent an equal amount of time sitting and/or standing ("half and half"). Plaintiff also worked at Jamesway for six months in 1993 as an assistant merchandise coordinator, which is akin to a receiving clerk. She stood for most of the day at this job. Prior to Jamesway, she worked at a warehouse from 1990-1993 as an expediter.

Plaintiff stopped working in November, 2004 because the company she worked for merged with another and she was terminated (R. 288). She further testified

> I was out looking for a job and I knew it was something wrong because I could barely walk. I was like my legs were locking up on me from my hips to down my legs. So, I went to the doctor to find out what was going on. He said all you need to do is just walk. He said it'll come out. But then I started having back problems right along with it. And I'm like I can barely stand up, I don't know what's going on with me. I was feeling knots in my back and my legs was hurting so bad so, that's why I picked that date, you know. (R. 294).

At the time of the hearing (April, 2006), plaintiff testified with regard to her ailments. Her back pain was so intense that she could barely get out of bed. She complained of shortness of breath

and as a result has difficulty climbing stairs and walking more than a block without pain (R. 295). On the day of the hearing, she walked from the train, but had experienced severe pain. Presently, she uses a cane due to a near fall when her right knee buckled; and she testified she had recently completed six weeks of physical therapy to alleviate the pain in her back. The therapy was unsuccessful (R. 297). She testified that her orthopedist advised against operating on her back (R. 301). She lives by herself, but her daughters visit often. Her granddaughter cleans the floors of her apartment for her and takes out the trash. Plaintiff cleans sometimes, but cannot clean the bathroom because it is small, and she can't bend. She testified that she does not shop. She is currently a smoker, but she told the ALJ that she is trying to quit. She further testified that she visits the asthma clinic every two weeks for treatment of a bronchial infection.

Plaintiff's Medical History

Plaintiff's medical records indicate that she treated at Saint Barnabus, Newark Beth Israel Medical Center sporadically between 2003 to 2006 for high blood pressure, sleep apnea, foot pain, back pain, and diabetes. Although her obesity was noted by the doctors, it does not appear that plaintiff was treated for it. She is prescribed the following daily medications: Diovan (high blood pressure); Lipitor (cholesterol); Glipizide (diabetes); Albuterol (asthma); and Nifedipine (high blood pressure).

With regard to sleep apnea, plaintiff underwent a sleep study in November 2004 (R. 216-18). A physician advised her to lose weight and prescribed a continuous positive airway pressure (CPAP) machine, which she is currently using to help her sleep (R. 218).

Also in 2004, a physician characterized plaintiff's asthma, blood glucose, and hypertension as being controlled by medication (R. 198). However, at one office visit, plaintiff reported that she

had discontinued her blood pressure medication and her blood pressure rose dramatically (188/84 mm Hg). In September 2004, plaintiff's lab results were within normal limits (R. 225).

In 2005, plaintiff continued to treat at Newark Beth Israel Medical Center for her conditions including chronic back pain. The physician assessed plaintiff's asthma as stable and controlled with medications (R. 194, 202, 214), her high blood pressure was under control with medications (R. 193, 213), as was her diabetes (R. 213).

Plaintiff was seen at St. Michaels Medical Center Emergency Room on May 21, 2006 for chronic back pain which radiated to both lower extremities. She also complained of chest pain which had commenced about six months earlier. She was released, but returned on May 23, 2006 with intractable chest pain and right arm tingling. A stress test indicated that she had "mid basal anterolateral segment ischemia versus breast shifting." As a result, Plaintiff underwent cardiac catheterization and had a stent placement (R. 300).

While at that facility, plaintiff sought treatment for her back pain, and it was recommended that she attend physical therapy, occupational therapy, pain management and apply moist heat. At that time, an MRI indicated "disc desiccation changes with herniation of discs at L4-L5 causing external pressure impressing over the thecal sac and mainly right lateral nerve root. Disc desiccation changes with central disc bulge is noted at L5-S1 causing internal pressure of the thecal sac." (R. 164-65). The radiologist's impression of the thoracic spine was "early degenerative arthritis. No acute fracture seen." (R. 172).

Plaintiff treated with Michele Famarin, a physical therapist at St. Michael's, who indicated that plaintiff was ambulating independently without an assistive device, and reported having discomfort in her back with pain being a 3 on a scale of 1-10. Plaintiff's range of motion was within

normal limits in all four extremities. She was functionally independent in mobility and ambulated 50 feet with supervision and without any assistive devices. She displayed a slight antalgic gait but with good balance and safety. It was recommended that she exercise independently at home and attend physical therapy one or two times per week (R 169). The orthopedic surgical team also recommended physical therapy (R. 138). However, in March of 2006, plaintiff indicated to her treating physician that she was not taking her pain medication for her back pain due to lack of money, and that she did not have a means of transportation to attend physical therapy sessions (R. 188-190). In her testimony above, plaintiff stated she tried physical therapy for six weeks, but that it did not help.

Consultative Examination and RFC Assessment

At an August, 2005 consultative examination by R.C. Patel, M.D., plaintiff alleged (a) asthma attacks (shortness of breath, coughing, and wheezing) twice per day for which she uses an Albuterol inhaler (R. 116); (b) diabetes since 2003 for which Glipizide is prescribed; (c) sleep apnea for which she uses a CPAP machine, but feels tired from lack of sleep; (d) high blood pressure for which she takes Diovan daily;[1] (e) arthritis in both feet; and (f) chronic back pain which gets worse when she walks or bends, for which she takes Vicoprofen (hydrocodone and ibuprofen) two times a day.

At the exam, her complaints were headache, blurry vision, weight gain, frequent urination, and pain in back and feet (R. 117). In addition to the symptoms described above, Dr. Patel found her to be obese but in no acute distress. She walked without a device with a normal gait. She had

---

[1] She reported that her high blood pressure causes headaches approximately once every two months, but denied having chest pain or other complaints from hypertension (R. 117).

diminished breath sounds in both lungs, but no wheezing, and her heart rate was normal. A Pulmonary Function Test ("PFT") was normal (R. 118; *see* R. 121, 124-32). Her heart had a normal sinus rhythm without murmur or gallop (R. 118). Plaintiff's lower extremities had no gross motor deficits, and shows normal reflexes, and normal sensations. Dr. Patel diagnosed chronic asthma, history of sleep apnea, diabetes mellitus, hypertension, and arthritis of the feet and the lumbar spine. Dr. Patel assessed that plaintiff could perform both fine and gross movements in both hands and no muscle weakness was noted. Grip was normal; there was no gross neurological deficit (R. 119).

Dr. Nikolaos Galakos, a State agency medical consultant, reviewed plaintiff's medical records and completed his assessment of plaintiff's physical residual functional capacity ("RFC") (R. 259). Dr. Galakos found that plaintiff could occasionally lift/carry twenty pounds; frequently lift/carry ten pounds; stand and/or walk at least two hours in an eight hour workday; sit about six hours in an eight hour workday; and was unlimited in her ability to push/pull. Her postural limitations were that she could occasionally (not frequently) climb, stoop, kneel, crouch, and crawl, but never balance (R. 258-265). She needed to avoid concentrated exposure to temperature extremes, wetness, and humidity, as well as fumes, gases, odors, and poor ventilation (R. 262).

II.

A claimant is considered disabled under the Act if he is "unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which . . . has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 423(d)(1)(A). Plaintiff will not be considered disabled unless she cannot perform her previous work and is unable, in light of her age, education, and work experience, to engage in any other form of substantial gainful activity existing in the national economy. *Id.* at § 423(d)(2)(A); *see*

*Sykes*, 228 F.3d. at 262; *Burnett v. Comm'r of Soc. Sec. Admin.*, 220 F.3d 112, 118 (3d Cir. 2000); *Plummer v. Apfel*, 186 F.3d 422, 427 (3d Cir. 1999). The Act requires an individualized determination of each plaintiff's disability based on evidence adduced at a hearing. *Sykes*, 228 F.3d at 263 (citing *Heckler v. Campbell*, 461 U.S. 458, 467 (1983)); *see* 42 U.S.C. § 405(b). The Act also grants authority to the Social Security Administration to enact regulations implementing these provisions. *See Heckler*, 461 U.S. at 466; *Sykes*, 228 F. 3d at 262.

The Social Security Administration has developed a five-step process for evaluating the legitimacy of a claimant's disability. 20 C.F.R. § 404.1520. ALJ O'Leary utilized that five step process in rendering his decision in this case. At step one, the ALJ found plaintiff was not currently engaged in substantial gainful activity as of the date of disability. 20 C.F.R. § 404.1520(a). At step two, the ALJ found plaintiff had several severe impairments including asthma, obesity, hypertension, diabetes mellitus, and low back pain. 20 C.F.R. § 404.1520(c). They were severe because they caused significant vocational limitations.

At step three, the ALJ determined that none of these severe impairments were equivalent to those found in the "Listing of Impairments" which would automatically trigger a finding of disability. 20 C.F.R. § 404, Subpart P, Appendix 1. 20 C.F.R. § 404.1520(e). When determining whether the claimant's impairments meet or equal any of the listed impairments, the ALJ must identify relevant listed impairments, discuss the evidence, and explain his reasoning. *Burnett v. Comm'r of Soc. Sec. Admin.*, 220 F.3d 112, 119 (3d Cir. 2000). A conclusory statement at this step of the analysis is inadequate and is "beyond meaningful judicial review." *Id.* ALJ O'Leary undertook the prescribed analysis.

First, the ALJ found that plaintiff did not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 CFR § 404, Subpart P, Appendix 1 (20 CFR 404.1520(d) ("Appendix"). In reviewing the evidence, the ALJ opined that no treating or examining physician had mentioned clinical findings equivalent in severity to the criteria of any listed impairment. With regard to her asthma, diabetes, high blood pressure, and sleep apnea, all are controlled by medication and/or devices. Her back disorder, according to the ALJ, "does not rise to the level of meeting the spinal stenosis, nerve root or spinal cord compression requirements of medical listing 1.04 (with the attendant sensory or reflex loss, spinal arachnoiditis or pseudoclaudicatoin) and is not supported by the necessary diagnosis and clinical evidence (Decision, p. 4). He further found that there was no evidence of severe chronic pulmonary insufficiency (3.02) and her asthma attacks were not of the frequency required by section 3.03B (Decision, p. 4). With regard to her allegations of nervousness[2], the ALJ concluded that she did not have a medically determinable mental or emotional impairment because she is not receiving any mental health treatment and is not on medication for anxiety or depression (Decision, p. 4). With regard to plaintiff's obesity, ALJ O'Leary cited the guidelines (SSR 02-1) which states "However, we will not make assumptions about the severity or functional effects of obesity combined with other impairments. Obesity in combination with other impairments may or may not increase the severity or functional limitation of the other impairments. We will evaluate each case based on the information in the case record". ALJ O'Leary therefore considered the obesity in the context of the

---

[2] Plaintiff does not allege psychiatric disability in her application. Within the Beth Israel records, there is an occasional reference to a prescription for Zoloft – an antidepressant. However, there does not appear to be any ongoing psychological treatment.

information in the record. Dr. Patel found that plaintiff was "obese, but not in acute distress." (R. 118) (Decision at p. 4).

Since claimant did not suffer from a listed severe impairment or an equivalent, the ALJ proceeded to step four. *Plummer v. Apfel*, 186 F.3d 422, 428 (3d Cir. 1999). In step four, the ALJ considered whether the claimant "retains the residual functional capacity to perform [his or] her past relevant work." *Id.*; *see Sykes*, 228 F.3d at 263; 20 C.F.R. § 404.1520(d). This step requires the ALJ to do three things: 1) assert specific findings of fact with regard to the claimant's RFC; 2) make findings with regard to the physical and mental demands of the plaintiff's past relevant work; and 3) compare the RFC to the past relevant work, and based on that comparison, determine whether the claimant is capable of performing the past relevant work. *Burnett*, 220 F.3d at 120. The claimant bears the burden of proof for steps one, two, and four of this five-step test. *Sykes*, 228 F.3d at 263. The claimant bears the burden of proving that she is unable to return to her former type of work. *Wallace*, 722 F.2d at 1153.

ALJ O'Leary reviewed at length plaintiff's residual functioning capacity. In sum, he concluded that plaintiff could perform work involving lifting and carrying objects weighing up to twenty pounds; frequently lifting and carrying objects weighing up to 10 pounds; standing, walking and sitting up to six hours in an eight our day; pushing and pulling arm and leg controls, involving no greater than simple tasks; in an environment free of excessive pulmonary irritants (Decision, p. 4-9).

The ALJ further concluded that this type of light work was consistent with her past relevant work as a data entry clerk/assistant manager at a brokerage house. As plaintiff described, her duties were to scan documents, pack boxes and place them on shelves. Relying on Dr. Patel, the ALJ found

that plaintiff could "do fine and gross movements with both hands [had] no muscle weakness in the hands and her grip strength was normal. She had a normal gait with no assistive devices, [and] she had no neurological deficits."

Within this decision at step four, Judge O'Leary emphasized that plaintiff's's description of her impairments were exaggerated compared to the objective findings of the treating and consulting physicians. The ALJ observed:

> I find the claimant's statements concerning her impairments and the impact on her ability to work are not entirely credible in light of the discrepancies between the claimant's assertions and information contained in the documentary reports, the reports of the treating and examining practitioners, the medical history, and the findings made on examination. The claimant's complaints are basically subjective and without substantial medical foundation. The limitations she alleged are far in excess of those which would be reasonably consistent with objective medical evidence, and are not consistent with all the other evidence. Having carefully considered such factors, I conclude that such complaints of disabling symptoms are not reasonably accepted. The evidence, as a whole, considers all the medical and non-medical elements, do not support the extent of the claimant's subjective complaints. The above-summarized testimony of the claimant sets forth the basic allegations regarding pain, medication, treatment, functional limitations, daily activities, and work history. Although the assertions of pain are reasonable to a degree, the overall record does not support them to the debilitating extent asserted.

Generally, the Court will defer to credibility findings where it is clearly explained why the plaintiff should not be believed. Here, the ALJ compared the objective findings of the physicians and compared them with plaintiff's subjective testimony. He determined the record as a whole does not support her claims. For example, at the hearing, plaintiff stated she uses a cane; but at the time of Dr. Patel's examination of plaintiff, she did not. Again at the hearing, plaintiff indicated her back pain

was so severe she could not get out of bed; but when at St. Michael's, she stated her back was a 3 on a scale of 1-10 (R. 168). *See generally Williams v. Barnhart*, 87 Fed. Appx. 240, 243 (3d Cir. 2004).

Finding that plaintiff could perform her past relevant work, the ALJ did not undertake a step five analysis.

## III.

Review of the Commissioner's final decision is limited to determining whether the findings and decision are supported by substantial evidence in the record. *See Morales v. Apfel*, 225 F.3d 310, 316 (3d Cir. 2000); *Hartranft v. Apfel*, 181 F.3d 358, 360 (3d Cir. 1999); 42 U.S.C. §405(g). The Court is bound by the ALJ's findings of fact if they are supported by substantial evidence in the record. 42 U.S.C. S 405(g); *Doak v. Heckler*, 790 F.2d 26, 28 (3d Cir. 1986). Substantial evidence has been defined as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Hartranft*, 181 F.3d at 360 (quoting *Pierce v. Underwood*, 487 U.S. 552, 565 (1988) (citation omitted)); *see Richardson v. Perales*, 402 U.S. 389, 401 (1971). Substantial evidence is less than a preponderance of the evidence, but more than a mere scintilla. *Richardson*, 402 U.S. at 401; *Morales*, 225 F.3d at 316; *Plummer*, 186 F.3d at 422. Likewise, the ALJ's decision is not supported by substantial evidence where there is "competent evidence" to support the alternative and the ALJ does not "explicitly explain all the evidence" or "adequately explain his reasons for rejecting or discrediting competent evidence." *Sykes*, 228 F.3d at 266 n.9

The reviewing court must view the evidence in its totality. *Daring v. Heckler*, 727 F.2d 64, 70 (3d Cir. 1984).

> A single piece of evidence will not satisfy the substantiality test if the [Commissioner] ignores, or fails to resolve, a conflict created by countervailing evidence. Nor is evidence substantial if it is overwhelmed by other evidence - - particularly certain types of evidence (e.g., that offered by treating physicians) - - or if it really constitutes not evidence but mere conclusion.

*Morales*, 225 F.3d at 316 (citing *Kent v. Schweiker*, 710 F.2d 110, 114 (3d Cir.1983)); *Benton v. Bowen*, 820 F.2d 85, 88 (3d Cir. 1987). Nevertheless, the district court's review is deferential to the ALJ's factual determinations. *Williams v. Sec'y of Health and Human Servs.*, 970 F.2d 1178, 1182 (3d Cir. 1992) (en banc) (stating that the District Court is not "empowered to weigh the evidence or substitute its conclusions for those of the factfinder"). A reviewing court will not set a Commissioner's decision aside even if it "would have decided the factual inquiry differently." *Hartranft*, 181 F.3d at 360. But despite the deference due the Commissioner, "appellate courts retain a responsibility to scrutinize the entire record and to reverse or remand if the [Commissioner]'s decision is not supported by substantial evidence." *Morales*, 225 F.3d at 316 (quoting *Smith v. Califano*, 637 F.2d 968, 970 (3d Cir. 1981)).

In this case, ALJ O'Leary carefully weighed all the evidence including medical records, the report of Dr. Patel, and the plaintiff's testimony. It is noteworthy, from a review of the record, there is not a single physician who find that plaintiff is disabled. Each and every conclusion is supported by substantial evidence. Even though this is the case, the Court will review the plaintiff's four arguments for reversal.

    a.    <u>ALJ failed to review MRI results</u>. Without citing to a single case, plaintiff argues that the ALJ failed to review MRI results, but instead relied on "the state agency paper review assessment." According to plaintiff, the ALJ exclusively relied upon the state agency physician

opinion and accordingly did not review "MRI studies performed on June 28, 2005 and May 24, 2006." The Plaintiff misreads the ALJ's opinion. It is very clear that the ALJ weighed the MRI results when making his decision. The ALJ chronicles the entire history of back problems from 2000 through the hearing date, and at one point hones in on the MRI. He writes:

> Dr. DeGuzman sent her for an MRI of the lumbar spine in June, 2005, which revealed degenerative changes and disc bulge with mild spinal stenosis at L4-L5 and small central disc herniation at L5-S1 with degenerative changes (Exhibit 1F). However, there was no evidence spinal cord or nerve root impingement (Exhibit 1F). Although the medical evidence documents that the claimant had a decreased range of motion in the lumbar spine, which is reasonably attributed to her back impairment, she had no other significant deficits.

(Opinion at p. 9). As a result, the plaintiff's contention that MRI evidence was disregarded is misplaced.

Secondly, plaintiff contends that the ALJ did not properly consider the "combination of impairments" including plaintiff's obesity. As noted previously (supra p. 8), it is quite clear that the ALJ within his step three analysis considered all the plaintiff's conditions including obesity. There is more than substantial evidence supporting the decision including the reports of Dr. Patel and Dr. Galakos. Moreover, the ALJ O'Leary indirectly found that plaintiff contributed to her own symptoms by failing to comply with doctor orders and pursuing healthy living strategies.

> I note that the clinic records indicate that claimant was encouraged to lose weight, diet, exercise, quit smoking, attend nutritional consults and physical therapy and maintain compliance with her medication regime, she was noted to be noncompliant with these treatment recommendations.

Hence, to argue that the combination of impairments were not considered is contrary to the record.

The plaintiff's third and fourth points are related. Here, plaintiff argues that it was unrefuted that plaintiff could not stand six hours as required by her last job, and to find otherwise is a gross error. More particularly, Plaintiff argues:

> The finding of the Administrative Law Judge that this plaintiff's would be able to be on her feet for 6 hours out of an 8 hour day (T16) is so far off base that it causes one to wonder whether the plaintiff's's testimony was considered at all.

Similarly, in point four, plaintiff contends that the ALJ's "vocational analysis is mistaken" because her prior relevant work was not sedentary, and at present plaintiff can not bend or lift. 20 C.F.R. 404.1567(a). There is sufficient substantial evidence that she can function as she had at her last job. As the ALJ noted, Dr. Patel found she walked with a normal gait and without a cane or walker, the MRI showed only mild degenerative arthritis, and the medical records from the clinic in 2004 revealed that she lived in a third floor walk-up which she traverses. In addition, at least one physician at Beth Israel refused to complete disability papers for her in 2006 because there was no evidence of disability (R. 186). In her disability application, plaintiff stated that she cooks, shops and performs light household chores like laundry. Again, performance of these tasks supports the finding that plaintiff can perform her past relevant work, which includes scanning documents, packing boxes and moving boxes onto shelves. Since there is substantial evidence to support the ALJ's decision, the Complaint is dismissed.

5/7/08

PETER G. SHERIDAN, U.S.D.J.

14